CRAIN, Judge.
This is an appeal of a decision by the State Civil Service Commission reversing the appellee’s dismissal from her classified civil service position.
On October 23, 1987, Gail D. Robinson, appellee, was verbally terminated by the Natchitoches Parish Housing Authority from her position as Housing Authority Project Manager I. She appealed to the State Civil Service Commission, which issued an opinion reversing her termination by finding the appellee to be a permanent employee and therefore subject to removal only for cause expressed in writing. La. Const. Art X, § 8(A). They ordered that the appellee be reinstated to her position retroactive to October 23, 1987, and be paid back pay from October 23, 1987, subject to an offset in favor of the Housing Authority for any wages earned or unemployment benefits received by her since her termination. Appellee also was credited with the annual and sick leave balances she had accrued when she transferred into the position from which she was dismissed, as well as the annual and sick leave she would *1385 have earned had she not been terminated. Further, all references to her termination were ordered removed from her personnel records. Attorney fees of $250.00 were awarded to the appellee and her attorney.
We find that the State Civil Service Commission did not abuse the discretion accorded it in matters of termination. Flowers v. Dept, of Revenue and Taxation, 507 So.2d 240 (La.App. 1st Cir.) writ denied, 513 So.2d 286 (La.1987). For the reasons assigned by the State Civil Service Commission in its decision, a copy of which is attached hereto and made a part hereof, the decision of the State Civil Service Commission is affirmed. All costs of this appeal are assessed against the appellant.
AFFIRMED.
APPENDIX
DECISION
In Re: Appeal of Gail D. Robinson (Natchitoches Parish Housing Authority)
State of Louisiana Civil Service Commission Docket No. 6801
STATEMENT OF THE APPEAL
Aug. 8, 1988
Appellant was employed by the Natchi-toches Parish Housing Authority as a Housing Authority Project Manager 1.
On November 4, 1987, appellant filed an appeal wherein she complains that on October 23, 1987, at 11:20 a.m., she was verbally terminated from her job, was handed her pay check and was asked for her office keys and the keys to the garage. Appellant alleges that she was told that she was being terminated because there was a shortage of $94.00 in rental money and because she had been illegally hired because the agency had gone too far down on the register when they hired her. Appellant further alleges that when she was told about her termination, she was also told that she was a probationary employee. Appellant contends that she was not a probationary employee because she was a transferee from E.A. Conway Memorial Hospital. Appellant also complains that upon termination, she was not paid for her accumulated annual leave and that when she inquired about it, she was told that since she was not hired under civil service, she could not accumulate annual and sick leave with the agency. Appellant denies any theft of money from the Housing Authority and alleges that her superiors had stated that they did not believe she took the money. Appellant also alleges that the real reason for her termination was the fact that she was placed in the difficult situation of supervising the Deputy Director’s husband. As relief, appellant seeks reinstatement, back pay, attorney’s fees and expungement of her record.
A public hearing was held before the Commission on June 7, 1988, in Alexandria. Based on the evidence presented, the Commission makes the following findings.
FINDINGS OF FACT
1. In July 1987, the Natchitoches Parish Housing Authority (hereafter, the Housing Authority) requested a probational certificate of eligibles from the Department of State Civil Service (hereafter, DSCS) for a position of Housing Authority Project Manager I. In response, the DSCS issued certificate no. 2666, which contained the names of sixteen eligibles. Appellant’s name appeared eighth on this certificate. On August 7, 1987, the Housing Authority sent an Inquiry of Availability (Standard Form-9) to each person listed on the certificate. The SF-9 indicated that the position was available as a probational appointment.
2. The SF-9’s introduced into evidence indicate that of the seven applicants whose names appeared above appellant’s on the certificate, one declined to be considered for the position, three failed to reply to the SF-9 and three indicated that they were available for appointment.
3. After completing the interviews, the Housing Authority selected appellant and on August 27,1987, returned the certificate to the DSCS indicating that appellant had been appointed. By memorandum dated August 28, 1987, the DSCS returned the certificate to the Housing Authority indi-
*1386 eating that appellant was not within reach and therefore could not be appointed.[1] This memorandum referred the Housing Authority to Instruction No. 10 on the reverse of the certificate,[2] advised the Housing Authority that the certificate was to be held until after September 11, 1987, due to the governor’s approval of the new pay plan effective June 29, 1987, and instructed the Housing Authority to return the certificate with the Standard Form-1 reporting the appointment.
4. On October 7, 1987, the Housing Authority resubmitted the certificate to the DSCS, again indicating appellant’s appointment. By memorandum dated October 19, 1987, the DSCS again returned the certificate to the Housing Authority, again indicating that appellant was not within reach on the certificate. DSCS instructed the Housing Authority to send in the SF-9’s and the SF-1 reporting the appointment together with the certificate.[3]
5. Meanwhile, on October 5, 1987, the Housing Authority prepared a Standard Form-1 reporting appellant’s “TRANSFER IN WITH PROMOTION” effective September 7, 1987 to the job of Housing Authority Project Manager 1. This SF-1 indicates the appointment status as “PROBATIONARY” and the permanent status date as “09/07/88.”[4] Whether this SF-1 was prepared as a result of reworking the certificate referred to in Findings of Fact 1, 3 and 4 cannot be determined. In any event, this SF-1 did not accompany the certificate referred to in Findings of Fact 1, 3 and 4 and a copy of this SF-1 was not received by the DSCS until April 22, 1988. Ultimately, this action was approved by the DSCS on July 5, 1988, after the hearing had been concluded.
6. Before working for the Housing Authority, appellant worked for E.A. Conway Memorial Hospital as a Hospital Admission Technician 2. While working for E.A. Conway Memorial Hospital, appellant was a state classified employee and she had obtained permanent status.
7. On September 1, 1987, E.A. Conway Memorial Hospital prepared an SF-1 reporting appellant’s transfer from that agency effective September 3, 1987. This SF-1 was received by the DSCS on October 30, 1987, but was not processed because the SF-1 reporting the transfer in had not been received by the DSCS. Ultimately, this action was approved on July 5, 1988, *1387 after the hearing of this appeal had been concluded.
8. By letter dated September 28, 1987, Lester Johnson, who worked in the Personnel Office at E.A. Conway Memorial Hospital, provided the Housing Authority with appellant’s annual and sick leave balances as of the date of her transfer from E.A. Conway Memorial Hospital. These balances (34.7452 hours of annual leave and 18.1292 hours of sick leave) were never transferred to appellant.
9. On October 23, 1987, appellant was verbally terminated from her position at the Housing Authority. The termination was reported to the DSCS on a Standard Form-1 which indicated “TERMINATION OF PROBATIONARY TRANSFER WITH PROMOTION” effective October 23, 1987. This SF-1 was received by the DSCS on December 1, 1987.
10. On December 1, 1987, the DSCS also received the certificate referred to in Findings of Fact 1, 3 and 4 as well as the SF-9’s associated therewith. Based on this information, appellant’s appointment from certificate no. 2666 was approvable.
11. The Housing Authority maintained that appellant was transferred in with probationary status. In support of this contention, the Housing Authority relies on the fact that the Inquiry of Availability stated that the job was available on a probational basis and that the SF-1 reporting the appointment says “PROBATIONARY.” Additionally, Louis Reno, the Executive Director of the Housing Authority, testified that he always hired employees on probation; that he has never transferred any employee in from another agency with permanent status; and that he told appellant that she was being hired on a probationary basis.
12. Appellant maintained that she was transferred in with permanent status. She testified that during her interview with Mr. Reno and Ms. Sarpy, they discussed the fact that she was already a state employee and therefore, she would need little orientation; that she told Mr. Reno and Ms. Sarpy that she was interested in the job, but would not accept it on a probationary basis; and that when Ms. Sarpy called her to offer her the job, Ms. Sarpy said that appellant would come in as a permanent employee.
CONCLUSIONS OF LAW
The issue in this appeal is appellant’s status. If she was permanent, she could only have been removed for cause expressed in writing [La. Const. Art. X, Sec. 8(A) ]. If she was probationary, she could have been verbally removed under Civil Service Rule 9.1(e).
In this appeal, appellant’s employment with the Housing Authority was reported as a “TRANSFER IN WITH PROMOTION.” This action is consistent with the SF-1 submitted by E.A. Conway Memorial Hospital indicating appellant’s “Transfer Out” of that agency and with the letter from E.A. Conway Memorial Hospital to the Housing Authority reporting appellant’s leave balances.
Transfers are governed by Civil Service Rule 8.15, which reads, in pertinent part, as follows:
8.15 Transfer.
(a) Subject to the provisions of subsection (d) hereof, a permanent or probationary employee may be voluntarily transferred from any position in the classified service in one department to any position in the classified service for which he is qualified in another department upon the recommendation of the appointing authority of said other department and approval by the Director.
Thus, under Civil Service Rule 8.15, a probationary employee can transfer to another agency. However, Civil Service Rule 8.20, which governs promotions modifies Civil Service Rule 8.15. Civil Service Rule 8.20 reads, in pertinent part, as follows:
8.20 Promotion.
(a) Subject to the provisions of Rule 8.9(a) and 8.9(c), each promotion shall be made by appointing one of the eligi- *1388 bles within the five highest final grade groups on a promotional certificate issued by the Director following competitive examination; or by the designation of a permanent employee for noncompetitive promotion and authorization thereof by the Director.
[[Image here]]
(c) In preparing a promotional certification from a register of eligibles established as the result of an open-competitive examination, the Director shall certify only those eligibles employed with permanent status within the promotional area established in accordance with the provisions of Rule 7.9(a)(2) of these Rules and shall certify them in the relative order of their standing on the register.
[[Image here]]
[Emphasis added.]
Thus, while a probationary employee can transfer to another agency, only a permanent employee can be transferred with a promotion.
In this case, the Housing Authority agreed to accept appellant as a transferee. While the Housing Authority may have wanted the transfer with promotion to be on a probationary basis, this is not allowed under the Civil Service Rules. In this regard, Civil Service Rule 9.1(b) reads as follows:
9.1 Probationary Period.
[[Image here]]
(b) A permanent employee who is promoted, transferred, reassigned or demoted to another position shall not be required to serve a probationary period in the new position.
[[Image here]]
Consequently, by operation of the Rules, appellant’s transfer with promotion was with permanent status, regardless of what appointment status the Housing Authority typed on the SF-1.
For all of the foregoing reasons, the Commission concludes that appellant was a permanent employee. As such, her verbal termination was in contravention of Section 8(A) of the Civil Service Article and Civil Service Rule 12.3. The Commission also concludes that appellee’s position in this case was unreasonable.
Accordingly, this appeal is granted. Appellant’s termination is reversed and she is to be reinstated to her position retroactive to October 23, 1987. Appellant is to receive back pay from October 23, 1987, subject to an offset in favor of the Housing Authority for any wages earned or unemployment benefits received by appellant since her termination. Appellant is to be credited with the annual and sick leave balances she had accrued when she transferred out of E.A. Conway Memorial Hospital (Civil Service Rule 11.19) as well as the annual and sick leave she would have earned had she not been terminated. All reference to appellant’s termination, except the SF-1 reporting it, are to be removed from appellant’s personnel records. Appel-lee is ordered to pay jointly to appellant and her attorney of record attorney’s fees in the amount of $250.00.
/s/ James'A. Smith
James A. Smith, Chairman /s/ Edwin J. Caplan
Edwin J. Caplan, Member /s/ Edwin C. Harbuck
Edwin C. Harbuck, Member /s/ Gerry Morris
V. Gerry Morris, Member /s/ Dianne C. Troullier
Dianne C. Troullier, Member
Vice-Chairman A.J. Capritto was absent and does not participate.

. Although it cannot be determined from Appointing Authority Exhibit No. 1, which is the certificate of eligibles that ultimately was processed three times, the records of the DSCS indicate that what had happened was the Housing Authority failed to include any entries in the "ACTION" column on the certificate and failed to send in the SF-9's documenting the declinations and failures to respond. Without this information, the appointment of someone listed eighth on the certificate could not be approved under Civil Service Rule 8.9, which requires appointment from within the top five grade groups.

. Instruction No. 10 reads as follows:
(10) On many certificates, the candidates are not listed strictly in accordance with their grades; however, it is still necessary that the person appointed be one of those shown in the top five grade groups if at least five candidates indicate availability for the position. (See Civil Service Rule 8.9.) The top-ranking candidates do not always have the highest grades because, for many positions candidates who are residents of the parish, area, or district in which a vacancy occurs are given preference.
Thus, although appellant's grade of 89 was the second highest on the certificate, she had to be considered as being in the eighth grade group.

. The second time the Housing Authority submitted the certificate to the DSCS, the Housing Authority had made the entries in the "ACTION” column that appear on Appointing Authority Exhibit No. 1, but neglected to include the SF-9’s to document those entries. Without this information, the appointment of someone listed eighth on the certificate could not be approved under Civil Service Rule 8.9.

. Appellant introduced into evidence a copy of the SF-1 referred to in Finding of Fact 5 that was identical in all respects to the copy of the SF-1 introduced by the Housing Authority except that on appellant’s copy, in the appointment status block, only the letter "P” was typed. The instructions for preparing an SF-1 indicate that the letter “P” can be used to indicate either permanent or probationary status. In light of the Conclusions of Law, there is no need to-determine which copy was a copy of the origi *1387 nal and which copy had been altered or whether two originals had been prepared.